# CIRCUIT COURT OF LOUDOUN COUNTY

NA Properties, Inc.

v.

Loudoun County et al.

July 3, 2012

Case No. CL69723

By Judge Thomas D. Horne

Plaintiff, NA Properties, Inc., seeks correction and revision of certain Orders of the Board of Equalization relating to the assessments of four contiguous parcels of land, both improved and unimproved, owned by the plaintiff and located in the Town of Leesburg, Loudoun County, Virginia. Va. Code Ann. § 58.1-3382. At issue are the 2010 tax assessments for the parcels as follows:

| Parcel Map | Pin # | Value Assessed |
| --- | --- | --- |
| /49////////16C | 147265426000 | $18,566,100 |
| /49////////16A | 147257832000 | $4,371,400 |
| /49///4////B3/ | 147156270000 | $2,419,100 |
| /49////////13G | 147368209000 | $2,306,900 |

Plaintiff asserts that the assessments should be corrected to reflect the following values for the relevant tax year:

| Pin # | Value Assessed |
| --- | --- |
| 147265426000 | $12,710,500 |
| 147257832000 | $600,500 |
| 147156270000 | $373,500 |
| 147368209000 | $620,000 |

It is the contention of NA Properties, Inc., that it is aggrieved by the assessments of the four parcels in that they have been valued in excess of their fair market value. Va. Code Ann. § 58.1-3984. In order to prevail, plaintiff must prove "that the property in question is valued at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal." Va. Code Ann. § 58.1-3984(A).

The following witnesses were called by the taxpayer.

Mark Mullins, Vice President of Legal Affairs for REHAU, Inc., and Corporate Secretary for NA Properties, Inc., testified as to the characteristics of the various properties and the circumstances relating to acquisition by REHAU and eventual transfer to NA Properties, Inc., an entity created by REHAU to own the real estate in order that it might continue to provide services. This was done "to bring its corporate structure in line with the North American practice." A transfer of the four parcels was accomplished in November 2009, with a fair market value used as the sales price at closing developed from an appraisal done by Dennis Duffy, a professional real estate appraiser. The sales price was established for the four contiguous parcels as "one piece." Mr. Mullins testified that the four parcels were not individually valued at that time because they did not anticipate a challenge to the real estate taxes and that a parcel by parcel valuation would have been more costly. The sales price was determined to be $16,090,000.

James Morgan, III, an employee of the United States Department of State, testified as to the historic significance of the earthworks located on parcel 16A, otherwise known as Fort Evans. Mr. Morgan serves as a volunteer guide with the Northern Virginia Regional Park Authority and as a battlefield guide at Ball's Bluff Battlefield, a short distance from the subject parcels.

Dennis Duffy, a professional appraiser with RCDH & Co. and a member of the Appraisal Institute, expressed a familiarity with the instant parcels and the methods of valuation that may be applicable to the instant tax properties. As previously noted, Mr. Duffy was involved in the prior appraisal utilized in valuing the properties for purposes of the transfer from REHAU to the plaintiff. He described manifest error by the County in making the assessment of each of the four parcels. With respect to Parcel 13G, he noted that the County valued the site as a "finished" site rather than a raw site and that the value was "a very high number relative to what I would consider to be a raw site. So the point there is, if it is a raw site, to get it to a buildable condition, you would have to expend additional dollars on top of the assessment to get it to a point where it is a pad-ready site for a working building." The assessment of Parcel B3 was similarly found by Mr. Duffy to constitute manifest error as the County valued the site as a "finished" site when it was a raw land. In summary, he noted with respect to both parcels 13G and B3, "[m]y view is that it is high because of the

things we just talked about. There is a material absorption issue to deal with as well as excess ground. We've got one of the two parcels is land locked, and the other, in both cases, they appear to be valued on a finished site basis relative to its as-is condition." Mr. Duffy further noted that, in his opinion, the County failed to properly account for the significance of the historic earthwork on the property in making its appraisal of Parcel 16A. He further noted that, with respect to Parcel 16C, it was his opinion that the County should have analyzed the property "on its component element parts" rather than "blending" those components in making its assessment of fair market value. This, he suggests, constituted error on the part of the assessor.

The following witnesses were called by the County and Town.

Jeanie Canon, a Senior Appraiser with the County of Loudoun, explained her use of the computer assisted mass appraisal or CAMA system in valuing parcels 13G, 16C, and 16A. In addition she noted that she made adjustment to values based upon the unique characteristics of the various parcels in making her appraisals.

Brian Thompson, a Senior Appraiser with the County of Loudoun, testified as to his appraisal of parcel B3. He, like Ms. Canon, testified as to his use of the CAMA system in making his appraisal. Similarly, he made adjustments to values based upon the unique characteristics of the parcel.

Ivo Romenesko, a Certified General Appraiser, testified on behalf of the County. Mr. Romenesko offered an extensive critique of the methods used and data relied upon by Mr. Duffy in his appraisal of the parcels.

William R. Ackman, Jr., the Director of Plan Review for the Town of Leesburg, testified as to the absence of any restrictions on the development of Parcel 16A within B3 Zoning District as a result of the presence of the historic earthworks on the property. As an engineer, he testified as to the need for a lot yield study to determine densities relied upon by Mr. Duffy, which had not been done.

John Nelson, Supervisor of the Commercial Division in the Loudoun County Office of the County Assessor and a certified general real estate appraiser, testified as to the January 1, 2010, assessments of the four parcels conducted during the calendar year of 2009. He expressed his familiarity with the CAMA system and with the four properties in question. As part of his testimony respecting his familiarity with the property, Mr. Nelson indicated that he had visited it on multiple occasions over the years. In making an individual analysis of the value of the parcels, he testified as to his review of the sales data utilized by Ms. Canon and Mr. Thompson as well as researching additional sales data that should have been considered. In the case of each assessment, it was Mr. Nelson's opinion that the assessments were reasonable and did not exceed the property's fair market value as of January 1, 2010. In each case, he explained his methodology used in making the value judgments.

Familiar principles guide the consideration of the application of that testimony and other evidence in testing the validity of the assessment pursuant to Va. Code Ann. § 58.1-3984(A). These principles are clearly delineated by Justice Kinser in *West Creek Associates v. County of Goochland*, 276 Va. 393, 665 S.E.2d 834 (2008). In writing for the Court, she observes:

> A taxing authority's assessment is presumed to be correct, and a taxpayer has the burden to rebut that presumption by establishing that the real property in question is assessed at more than fair market value or that the assessment is not uniform in its application. "The effect of this presumption is that, even if the assessor is unable to come forward with evidence to prove the correctness of the assessment, this does not impeach it since the taxpayer has the burden of proving the assessment erroneous." . . . [A] taxpayer must show by a clear preponderance of the evidence that the taxing authority committed manifest error or totally disregarded controlling evidence in making the assessment. . . .
>
> When a taxpayer attempts to prove manifest error solely by showing a significant disparity between fair market value and assessed value without showing that the taxing authority employed an improper methodology in arriving at the property's assessed value, the taxpayer cannot prevail "so long as the assessment comes within the range of a reasonable difference of opinion . . . when considered in light of the presumption in its favor.". . .
>
> "[F]air market value 'is the present actual value of the land with all its adaptations to general and special uses, and not its prospective, speculative, or possible value, based on future expenditures and improvements.'.". . .
>
> "It was within the province of the court, as the fact-finder, to determine the credibility of the witnesses.". . .
>
> In order to satisfy the statutory requirement of showing that real property is assessed at more than its fair market value, see Code § 58.1-3984(A), a taxpayer must necessarily establish the property's fair market value. This is so irrespective of whether a taxpayer is attempting to show manifest error or disregard of controlling evidence by proving a significant disparity between fair market value and assessed value, or by establishing a flawed methodology by the taxing authority in setting the assessed value.

*Id.* at 409, 414, 416-17 (citations and quotations omitted).

With respect to the methods applied in determining fair market value of real estate, it has been observed that:

[T]axing authorities commonly use one or more of three valuation approaches: the cost approach, income approach, and sales approach. Each of these approaches utilizes different characteristics of a property to estimate fair market value, and each analyzes different elements of the property which would likely affect the price a potential buyer would be willing to pay for the property on the open market. Ideally, an appraisal should, if possible, derive its final determination of a property's value using all three approaches in order to maximize the likelihood that the valuation accurately reflects the property's fair market value.

However, with respect to any given property, a taxing authority may determine that the use of one or more of these approaches is not feasible. In cases where a taxing authority bases an assessment of fair market value solely on one approach in determining the fair market value of property, the resulting assessment is entitled to the presumption of validity so long as the taxing authority "consider[s] and properly reject[s]" the other valuation methods. In applying the "considers and properly rejects" standard to a taxing authority's decision to apply a single approach, we have refused to afford a presumption of validity to an assessment when the taxing authority failed to make an "effort to acquire the data necessary to perform appraisals" based on the other approaches.

*Keswick Club v. County of Albemarle*, 273 Va. 128, 137, 639 S.E.2d 243 (2008) (citations and quotations omitted).

In the instant case, at the close of trial, the County and Town moved to strike Mr. Duffy's testimony with respect to the value of the 1401 building on parcel 16A, to the value of Fort Evans, and to the value of the excess land. At the final hearing in this matter, the County and Town also renewed their motion to strike all of the evidence in this case, which the Court previously had denied without prejudice.

The Court finds that the County and Town's motion to strike with respect to the above mentioned portions of Mr. Duffy's testimony should be granted. Mr. Duffy's testimony with respect to the value of the 1401 building was based on an income capitalization analysis that assumed the building, which is currently vacant, would be renovated and leased. These assumptions are conjectural and speculative. See *Fruit Growers Express Co. v. Alexandria*, 216 Va. 602, 609, f. 3, 221 S.E.2d 157 (1976) (noting that, "[i]t is not proper to speculate on what could be done to the land or what might be done to make it more valuable and then solicit evidence on what it might be worth with such speculative improvements at some unannounced future date" and that, "[t]o permit such evidence would open a flood-gate of speculation and conjecture that would convert [a] . . . [tax assessment] proceeding into a guessing contest."). Mr. Duffy's testimony

with respect to Fort Evans also was speculative, as Mr. Duffy assumed that Fort Evans was unusable and had zero value despite the absence of any legal restrictions to the development of the property.

With respect to the excess land value, Mr. Duffy failed to have an engineer prepare a lot yield study to determine the amount of potential development density available on the parcels. Mr. Duffy instead estimated his own achievable density for each parcel. Mr. Duffy first estimated the typical floor area ratio (FAR) for office and industrial uses then calculated the amount of potential density on each site. Mr. Duffy then estimated the achievable density on each parcel by considering a lot yield study ("the Other Parcel Study") prepared for an unidentified 137-acre parcel located somewhere in the County. Mr. Duffy, as keeper of the secrets, not only refused to identify the engineer that prepared this study but also failed to identify the location and density of the parcel, as well as merely describing the physical characteristics of the parcel as "totally vacant and relatively flat." Given these circumstances and the absence of any evidence to show that this is an acceptable practice in the appraisal process, the Court finds Mr. Duffy's reliance on the Other Parcel Study and estimation of achievable densities highly speculative and elusive.

Based on these findings, the plaintiff is unable to establish the fair market values of parcels B3 and 13G, as these are comprised entirely of excess land, 16A, due to the improper valuation of the 1401 building and the excess land, and 16C, a portion of which also consists of excess land. Although the Court could stop its analysis here, the Court believes that, given the magnitude of this case, further analysis is warranted. Based on the evidence presented, the Court additionally finds that the plaintiff has failed to prove by a clear preponderance of the evidence a manifest error or a total disregard of controlling evidence in making the assessments.

Plaintiff's arguments in support of its challenge focuses on what it is suggested are numerous errors that "undermined the integrity of the County's assessment" and that, "[t]aken together, the collective errors reveal a process that may be generally reliable in the ordinary cases involving common parcels, but which was wholly inadequate to address the unique appraisal challenges presented by these parcels." However, the record is devoid of evidence that preponderate to this conclusion.

The two appraisers, Ms. Canon and Mr. Thompson, explained the method used and adjustments made based upon the unique characteristics of each parcel. Mr. Nelson reviewed their work, visited the parcels, and did his own independent research in validating their conclusions. Contrariwise, Mr. Duffy's testimony regarding both his method and the data that he relied upon in making a determination of value is not without its critics. Even if the Court were to consider Mr. Duffy's testimony as credible, the evidence at best merely demonstrates a difference of opinion about value that is trumped by the presumption in favor of the County.

## Parcel 13G

Parcel 13G consists of vacant land of approximately 13.24 acres and includes a right-of-way easement to the Town of Leesburg. An appraisal of this parcel for the 2010 tax year was made by a senior appraiser utilizing the sales comparison approach. She accounted for the impact of damage and steep slope areas. The failure to use a "residual analysis" based upon a potential lot yield for the parcel, as proposed by the plaintiff's expert, was adequately explained away by the taxing authority. As to parcel 13G, the Court finds that the assessment is presumptively correct and that the plaintiff has failed to show by a clear preponderance of the evidence that the taxing authority committed manifest error or totally disregarded controlling evidence in making the assessment.

## Parcel B3

Parcel B3 is an irregularly shaped lot that does not border on a public road. It consists of 15.32 acres of vacant land and is surrounded by commercial development. The County assessor valued the tract utilizing a sales comparison approach. The assessor inaccurately testified that there was an easement by necessity on the property; however, the assessor took into consideration and made a downward adjustment based upon the issues of access and shape of the parcel. As with parcel 13G, a failure of the county to use a "residual analysis" based upon a potential lot yield for the parcel, as proposed by the plaintiff's expert, was adequately explained away by the taxing authority. The Court finds the assessment of parcel B3 is presumptively correct and that the plaintiff has failed to show by a clear preponderance of the evidence manifest error or a total disregard of controlling evidence in making the assessment of parcel B3.

## Parcel 16C

The County assessor valued Parcel 16C using the sales comparison approach. Parcel 16C consists of 30.68 acres and is improved with two office buildings. One building consists of 83,220 square feet (Building 1501), while the other consists of 70,141 square feet (Building 1503). A base land value below the comparable sales was utilized in making the assessment of this parcel. In valuing the buildings, Ms. Canon utilized the cost approach and considered sales data for Class A and B office buildings.

A cost analysis was made of the buildings and depreciation applied as to each building. In addition, an income model was developed for both buildings using Loudoun County market data. Accordingly, various methods of valuation of the property were explored and satisfactorily explained in making the assessment.

The plaintiff failed to show by a clear preponderance of the evidence a manifest error or a total disregard of controlling evidence in making the assessment of Parcel 16C. The testimony of the expert retained by the plaintiff was, at best, a mere difference of opinion to that offered by the defendants and, to the extent it relied upon excess land values, is speculative.

## Parcel 16A

Parcel 16A consists of 9.49 acres of land. It is improved by a 4,672 square foot dwelling as well as other outbuildings and structures. A view of the parcel revealed these buildings to be in a seriously dilapidated state. It would appear that access to the parcel is by easement as there is no public road frontage for lot 16A. The site is also encumbered by a family crypt and an earthwork fort. A comparison sales method was utilized by the County appraiser. As with Parcel 16C, the testimony demonstrated that the county utilized the CAMA system in making the appraisal and in determining costs and depreciation rates for the structures on the property. A 50% depreciation factor was applied to the buildings on the property and an additional downward adjustment made to the valuation of the principal building. Such adjustment and valuation methods were shown to be reasonable, given the condition of the buildings, current zoning that would permit construction on the open space currently occupied by the fort, and access available to the tract. The plaintiff failed to show by a clear preponderance of the evidence a manifest error or a total disregard of controlling evidence in making the appraisal of Parcel 16A.

Accordingly, the Court will enter judgment in favor of the defendants and thereby affirm the County's 2010 assessment in each of the four subject parcels.